**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| JUDICIAL WATCH, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civ. No. 1:12-cv-1510 (JDB) |
| | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S MOTION TO STAY

The United States Department of Justice moves to stay this Freedom of Information Act

("FOIA") action, pending further developments in the underlying congressional subpoena

litigation between the House Oversight and Government Reform Committee ("House

Committee") and the Attorney General.  *House Committee v. Holder*, No. 1:12-cv-1332

(D.D.C.).  A temporary stay of this FOIA action would avoid interference both with *House*

*Committee*, a dispute between the political branches of "extraordinary public moment," *Landis v.*

*North American Co.*, 299 U.S. 248, 256 (1936), and with ongoing efforts by the parties to that

litigation to resolve that dispute outside of court in conformity with constitutional principles of

negotiation and accommodation.[1]

As the Court is aware, Plaintiff Judicial Watch filed this action under FOIA, challenging

the Department of Justice's denial of a June 22, 2012 FOIA request for "[a]ll records subject to

the claim of executive privilege invoked by President Barack Obama on or about June 20, 2012."

---

[1] Pursuant to Local Rule 7(m), the Department conferred with Judicial Watch regarding this
motion, and Judicial Watch opposes.

Am. Compl. ¶ 5, ECF No. 8.  The Presidential invocation of executive privilege described in the

Judicial Watch complaint was a response to a subpoena issued on October 11, 2011 to the

Attorney General in connection with a congressional investigation into a Bureau of Alcohol,

Tobacco, Firearms and Explosives ("ATF") operation known as Operation Fast and Furious.

That same subpoena is the subject of the *House Committee* suit.  In that action, the House

Committee seeks to enforce the October 11 subpoena and challenge the President's assertion of

executive privilege.  Plaintiffs here thus seek under FOIA the very records that were withheld

from the House Committee pursuant to the President's assertion of executive privilege and that

are now at issue in the earlier-filed *House Committee* litigation.

Against this unique backdrop, this FOIA litigation should not proceed for at least two

reasons.  First, there is currently a live dispute between the political Branches over these same

documents, as well as an ongoing effort to resolve that dispute.  Litigating this FOIA case,

particularly while such a live inter-Branch dispute persists, is inconsistent with, and risks

interference with, the negotiation and accommodation process contemplated by the Constitution

when such disagreements exist between the Executive and Legislative Branches.  Second,

principles of comity and respect for orderly judicial process counsel strongly against addressing

the privilege claims in this FOIA suit while Judge Jackson actively considers the *House

Committee* litigation.  Not only is that the earlier-filed litigation, but both principal

stakeholders—the Executive Branch and the House of Representatives—are present in that

litigation.  Judge Jackson's decisions on any number of issues in that case could have significant

implications for the issues presented here.

The Department thus proposes that the requested stay be entered to allow the *House

Committee* suit to proceed and to allow the ongoing discussions in that case to unfold. The

Department proposes filing a status report no later than two weeks following Judge Jackson's decision on the pending motion to dismiss or following any settlement of that case, updating the Court and Judicial Watch regarding the underlying subpoena dispute, and indicating the Department's view as to whether it makes sense to proceed with this FOIA suit at that time or to continue the stay.

In short, rather than moving forward now with this litigation, this Court should allow the *House Committee* litigation pending before Judge Jackson to proceed and should let the process of negotiation and accommodation run its course, and then decide with the input of the parties whether and how this action may appropriately proceed at that time.

## BACKGROUND

Judicial Watch filed this action under FOIA, 5 U.S.C. § 502, challenging the Department's denial of a June 22, 2012 FOIA request for "[a]ll records subject to the claim of executive privilege invoked by President Barack Obama on or about June 20, 2012." Am. Compl. ¶ 5, ECF 8. The Presidential invocation of executive privilege described in the Judicial Watch complaint was made in response to a House Committee subpoena issued on October 11, 2011 to the Attorney General in connection with a congressional investigation into an ATF operation known as Operation Fast and Furious. That subpoena is the subject of the *House Committee v. Holder* lawsuit, currently pending in this district before Judge Jackson, in which the House Committee seeks judicial enforcement of the subpoena.

### *The Underlying Congressional Subpoena Dispute*

The congressional inquiries into Operation Fast and Furious began in January of 2011, when Senator Charles E. Grassley, the Ranking Minority Member of the Senate Judiciary Committee, wrote to the ATF expressing concern about allegations that ATF had sanctioned the

sale of guns to suspected straw purchasers who then transferred the weapons throughout the southwest border area and into Mexico, and that two of those guns were connected to a December 2010 firefight in which Customs and Border Protection Agent Brian Terry had been killed.  *See* U.S. Department of Justice, Office of Inspector General, A Review of ATF's Operation Fast and Furious and Related Matters 329 (2012) ("IG Report"), http://www.justice.gov/oig/reports/2012/s1209.pdf.

In its February 4, 2011 response to Senator Grassley, the Department indicated its understanding that ATF did not sanction or otherwise knowingly permit the tactics described in Senator Grassley's letter, and that ATF made every effort to interdict weapons that were purchased illegally.  *See id.* 332-61.  However, conflicting information began to emerge after the Department's letter was sent, and, among various steps undertaken to understand what happened in Operation Fast and Furious, the Attorney General asked the Department's Inspector General to conduct an independent review.  On December 2, 2011, the Department formally withdrew the February 4 letter.  At the same time, the Department produced to the House Committee 1,364 pages of records containing deliberative material documenting the drafting of the February 4 letter.  *See id.* at 289-391.

Meanwhile, the House Committee had issued a document subpoena to the ATF on March 31, 2011.  Over the course of several months, the Department produced 2,050 pages of records, in addition to responding to more than a dozen additional letters and requests from Congress and providing frequent briefings and sworn testimony.  Notwithstanding this response, on October 11, 2011, the Committee issued a second subpoena for records, this one directed to the Attorney General, which contained 22 separate broad requests for documents.

In response to the October 11, 2011 subpoena, the Department produced to Congress thousands of pages of executive branch documents, including sensitive law enforcement information.  The Department also provided hours of congressional testimony by and interviews with senior Department officials.  The Department endeavored to be responsive to the Congressional requests, while simultaneously protecting certain sensitive materials, including those involving ongoing law enforcement investigations and Departmental deliberations about how to respond to the congressional requests or media inquiries.  By June 2012, it was nonetheless clear that the Committee would seek to hold the Attorney General in contempt for withholding documents responsive to the October subpoena.  Accordingly, on June 19, 2012, the Attorney General requested that the President assert executive privilege over documents generated after February 4, 2011, and "created . . . in the course of the Department's deliberative process concerning how to respond to congressional and related media inquiries into [Operation Fast and Furious]."[2]  Assertion of Exec. Privilege over Documents Generated in Response to Congressional Investigation into Operation Fast and Furious, 2012 WL 2869615, at *1 (U.S.A.G. June 19, 2012).  The Attorney General explained his concern that the release of such documents "would have significant damaging consequences" and "would inhibit the candor of . . . Executive Branch deliberations in the future and significantly impair the Executive Branch's ability to respond independently and effectively to congressional oversight."  *Id.* at *2.  Thereafter, the President asserted executive privilege, as requested by the Attorney General.  Despite the President's assertion of executive privilege, the House Committee, and then the full House, cited

---

[2]   As noted above, the Department had already produced to the House Committee on December 2, 2011, all documents generated on or before February 4, 2011, in the course of preparing the February 4 letter.

the Attorney General for contempt of Congress for his response to the October 11, 2011
subpoena.

Approximately two months later, on August 13, 2012, the House Committee filed suit
against the Attorney General, seeking judicial enforcement of certain portions of the October 11,
2011 subpoena, allegedly in order to determine whether the Department attempted to "obstruct"
the Committee's investigation.  Soon after the filing of the Committee's lawsuit, on September
19, 2012, the Department's Inspector General issued a comprehensive 471-page report on
Operation Fast and Furious and the Department's response to the related congressional
investigations.   In order to provide the public with the Inspector General's complete analysis of
Operation Fast and Furious and its aftermath, the President authorized the Department to release
in unredacted form those portions of the IG Report that discuss the Department's responses to
Congress after February 4, 2011.  In addition, the President authorized the production to
Congress of the post-February 4 documents referenced in the report regarding the Department's
response to Congress.

On October 15, 2012, the Attorney General moved to dismiss the Committee's lawsuit
for lack of jurisdiction, arguing, among other grounds, that the limits imposed by Article III
preclude jurisdiction over such an inherently political dispute and that the proper means for
attempting to resolve the dispute are through the constitutionally grounded process of negotiation
and accommodation.  The Attorney General's motion to dismiss has been fully briefed by the
parties.  A joint status report, addressing, among other things, the parties' respective positions
regarding the legal impact of the termination of the 112th Congress on January 3, 2013 and the
consequent expiration of the subpoena that is the subject of the Committee's lawsuit, was filed
on January 7, 2013, and Judge Jackson held a status conference yesterday, January 10, 2013.

Today, January 11, 2013, the House Committee is expected to file a response to an amicus brief filed by five members of Congress supporting dismissal of the *House Committee* suit. Oral argument on the motion to dismiss is scheduled for February 7, 2013.

Notwithstanding the ongoing *House Committee* litigation, the Department believes the subpoena dispute should be resolved between the political branches consistent with the constitutionally grounded process of negotiation and accommodation. Negotiations between the parties are ongoing.

### *This FOIA Suit*

Judicial Watch filed its suit on September 13, 2012. By letter dated August 6, 2012, the Department's Office of Information and Privacy denied Judicial Watch's FOIA request, citing FOIA Exemption Five, 5 U.S.C. 552(b)(5), and referencing the President's assertion of executive privilege. Plaintiff administratively appealed, requiring the Department to make a determination regarding the appeal by September 12, 2012. Having not received a determination by that date, Judicial Watch filed suit the following day.

The Department answered Plaintiff's Complaint on October 18, 2012. On November 16, 2012, the Department indicated in connection with a proposed briefing schedule that it was "investigating potentially available threshold arguments that may prove dispositive in this case or otherwise obviate the need for proceeding with this litigation." Joint Filing 4, ECF No. 13. On December 4, 2012, in response to a separate order, the Department further indicated that it anticipated arguing that this FOIA litigation should not proceed at this time, in light of the *House Committee* litigation and efforts to resolve that underlying dispute. *See* Notice, ECF 14. Support for that argument is presented here.

**STANDARD OF REVIEW**

District courts considering a motion to stay an action pending developments in another case are guided principally by the Supreme Court's decision in *Landis v. North American Co.*, which held that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  299 U.S. at 254; *see also Belize Social Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731-733 (D.C. Cir. 2012) (applying *Landis* and its D.C. Circuit progeny). *Landis* teaches that deciding whether to grant a stay motion "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance."  299 U.S. at 254-55. While "[t]he proponent of a stay bears the burden of establishing its need," *Clinton v. Jones*, 520 U.S. 681, 708 (1997), courts should "be on . . . guard against depriving the processes of justice of their suppleness of adaptation to varying conditions."  *Landis*, 299 U.S. at 256.  A stay is proper, so long as it is "kept within the bounds of moderation."  *Id.*; *see also id.* at 257 (A "stay is immoderate and hence unlawful unless so framed in its inception that its force will be spent within reasonable limits, so far at least as they are susceptible of prevision and description.").

A Court's discretionary authority to stay one action in light of another is not diminished simply because the parties or the issues in the two proceedings are not identical.  *Id.* at 254 ("[W]e find ourselves unable to assent to the suggestion that before proceedings in one suit may be stayed to abide the proceedings in another, the parties to the two causes must be shown to be the same and the issues identical."); *id.* at 255 (rejecting as "too mechanical and narrow" a rule that "irrespective of particular conditions, there is no power by a stay to compel an unwilling litigant to wait upon the outcome of a controversy to which he is a stranger.").  Indeed, "[e]specially in cases of extraordinary public moment, the individual [plaintiff] may be required

to submit to a delay not immoderate in extent and not oppressive in its consequences if the public welfare or convenience will thereby be promoted." *Id.* at 256.

## ARGUMENT

**I.     A TEMPORARY STAY IS APPROPRIATE TO AVOID INTERFERENCE WITH THE PROCEEDINGS IN *HOUSE COMMITTEE v. HOLDER*.**

A stay may be appropriate merely to avoid interference with another dispute, especially a case of public importance. *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971) ("avoid[ing] interference with . . . a case of public importance . . . presented strong consideration for stay"). The *House Committee* litigation and the underlying dispute between the political branches over the documents at issue in this FOIA suit are unquestionably disputes of public importance. Litigating Judicial Watch's FOIA action at this time is inconsistent with, and risks interference with, that litigation, as it could well call upon this Court to decide in the first instance questions regarding the viability and application of the President's invocation of executive privilege over the documents at issue—questions that the Legislative Branch had earlier put before Judge Jackson in *House Committee*. Moreover, the House Committee litigation has before it the two parties with the most direct interest in those questions. The court in *House Committee* thus should at least be given the opportunity to decide whether it has, and should exercise, jurisdiction to determine in the first instance any questions regarding the viability or application of the President's invocation of executive privilege.

Moreover, proceeding with the FOIA suit at this time risks interference with efforts by the political branches to resolve the subpoena dispute consistent with the process of negotiation and accommodation contemplated by the Constitution. That process is a product of a constitutional scheme designed to preserve the separation of powers. *United States v. AT&T Co.*,

567 F.2d 121, 130 (D.C. Cir. 1977) ("The Constitution contemplates such accommodation."). The accommodation process thus represents more "than the mere degree to which ordinary parties are willing to compromise." *Id.* Rather, "[n]egotiation between the two branches should thus be viewed as a dynamic process affirmatively furthering the constitutional scheme," *id.*, and "each branch should take cognizance of an implicit constitutional mandate to seek optimal accommodation through a realistic evaluation of the needs of the conflicting branches in the particular fact situation." *Id.* at 127.

The ability of the Executive and Legislature to engage in this complex and politically sensitive process will be negatively impacted if, at the same time, the Executive is required to litigate against a third party in a separate case over the very documents that are the subject of negotiation and accommodation. For example, the Legislative Branch may well be less inclined to reach an accommodation with the Executive if it believes there is a possibility that a third party might obtain by court order the records over which it is negotiating. Conversely, if the negotiation and accommodation process is allowed to continue without the encroachment that this case threatens, that process may ultimately result in the release of additional records currently withheld on the grounds of executive privilege, which is the very relief sought by Judicial Watch. And even if that does not occur, it is advisable in this circumstance to enter a stay to allow further efforts to resolve the *House Committee* dispute, because any resolution of the dispute would surely promote public welfare and convenience—reducing the burdens on the court, the parties, and counsel in that case, as well as conserving significant public resources that would otherwise be expended in potentially protracted litigation. As the Supreme Court has recognized, "'[e]specially in cases of extraordinary public moment, [a plaintiff] may be required to submit to delay not immoderate in extent and not oppressive in its consequences if public

welfare or convenience will thereby be promoted.'"  *Clinton*, 520 U.S. at 707 (quoting *Landis*, 299 U.S. at 256).

This is not merely a circumstance where two cases involving related issues (or concerning the same documents) are proceeding simultaneously.  The *House Committee* litigation involves a clash between the political branches of the federal government, raising significant constitutional questions regarding the separation of powers and the fundamental structure of our government.  In that litigation, the Legislative Branch seeks to obtain records from the Executive, and the Judiciary must now determine whether it can and should assume jurisdiction over the dispute between these parties regarding the same documents that are at issue here.  It is a "weighty and unusual" case.  *Landis*, 299 U.S. at 256 ("An application for a stay in suits so weighty and unusual will not always fit within the mould appropriate to an application for such relief in a suit upon a bill of goods."); *see also Comm. on the Judiciary v. Miers*, 542 F.3d 909, 911 (D.C. Cir. 2008) (noting that a similar congressional subpoena dispute was "of potentially great significance for the balance of power between the Legislative and Executive Branches").

By contrast, this FOIA suit, concerning a private party's FOIA request made immediately after the President's assertion of executive privilege in the context of the subpoena dispute underlying *House Committee*, is ancillary to the *House Committee* suit.  Sound judgment counsels in favor of permitting that dispute to proceed first, and without interference.

## II.   PRINCIPLES OF COMITY FURTHER COUNSEL IN FAVOR OF A STAY.

Principles of comity and respect for orderly judicial process, including considerations of judicial economy, also weigh in favor of a temporary stay.  "[A] trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an

action before it, pending resolution of independent proceedings which bear upon the case.'"
*Hisler v. Gallaudet Univ.,* 344 F. Supp. 2d 29, 35 (D.D.C. 2004) (quoting *Leyva v. Certified Grocers of California, Ltd.,* 593 F.2d 857, 863–64 (9th Cir.1979)) (alteration in original).

Judge Jackson's decision on any number of issues in the *House Committee* case could have significant implications for the issues presented here. Most significant, of course, would be any decision regarding the merits of the executive privilege assertion. If Judge Jackson were to reach the merits of the assertion, such a ruling would, at the very least, be relevant here. Likewise, however, any ruling by this Court on the merits of the assertion would be relevant to the *House Committee* litigation. And because it is only in the first-filed *House Committee* litigation that the principal stakeholders to the underlying dispute—the Executive Branch and the House of Representatives—are present, principles of comity strongly suggest that this Court should refrain from proceeding in this case, at least temporarily, to avoid interference with the proceedings that should take precedence.

Moreover, even if the House Committee action were to "not settle every question of fact and law" in this case, the requested stay would still be appropriate. *Landis*, 299 U.S. at 256. A stay should be issued if it would advance the interests of "economy of time and effort for [the court], for counsel, and for litigants." *Id.* at 254. Because further developments in the House suit short of a ruling on the merits may still "narrow the issues . . . and assist in the determination of the questions of law involved" in the FOIA suit, it is proper to temporarily stay this action. *Id.* at 253.

## III.     THE REQUESTED STAY WOULD NOT CAUSE UNFAIR PREJUDICE.

A temporary stay in this FOIA suit will not unfairly prejudice Judicial Watch. As an initial matter, whatever individual interest Judicial Watch may have in obtaining the records

sought is irrelevant, because this is a FOIA case.  *Friedman v. Bache Halsey Stuart Shields, Inc.*, 738 F.2d 1336, 1344 (D.C. Cir. 1984) ("In the FOIA context, the requesting party's need for the information is irrelevant.").  Moreover, the typical, evidence-related reasons for avoiding a stay of litigation—such as the benefit of obtaining testimony as soon as possible or the need to ensure preservation of physical evidence—are also not relevant here, given that discovery is not appropriate in FOIA.  *See Doe v. Sipper*, 869 F. Supp. 2d 113, 117 (D.D.C. 2012) (discussing interests a plaintiff could assert in opposing a motion to stay); *see also Engelking v. Drug Enforcement Admin.*, 119 F.3d 980, 980-81 (D.C. Cir. 1997).

To be sure, there is a generalized public interest in the proper administration of FOIA, which, at its core, contemplates the release of records not subject to exemption in order to enable the public to know "what their government is up to."  *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989).  But the FOIA interest advanced here—challenging the Department's withholding of certain records—is also being pursued in the context of the *House Committee* litigation and the process of negotiation and accommodation.  Therefore, the public need not rely on a FOIA plaintiff to advance its interest here.  And, indeed, permitting the process of negotiation and accommodation to proceed might even lead to the further release of records over which the President has invoked privilege.[3]

This Court can furthermore properly take into account the fact that Judicial Watch has requested under FOIA records that are on their face subject to executive privilege.  At the very

---

[3]   Indeed, the public interest in making known the government operations at issue has already been addressed, as noted above, by the public release of the IG's comprehensive report on Operation Fast and Furious.  In that report, the IG made findings specifically regarding the very concern expressed by the House Committee that is asserted as the basis of its request for the documents in question.

least, the President is entitled to a presumption of good faith in the invocation of this privilege, which therefore underscores the likelihood that the records at issue can appropriately be withheld under Exemption Five of FOIA.  For all of these reasons, Judicial Watch cannot demonstrate that either its interests or the public's interest would be sufficiently harmed so as to counsel against a temporary stay of this FOIA action.

Lastly, the process proposed for evaluating the stay also argues in favor of granting a stay.  Here, the Department proposes that the requested stay be entered to allow the *House Committee* suit to proceed and to let the ongoing discussions in that case to unfold.  The Department proposes filing a status report no later than two weeks following Judge Jackson's decision on the pending motion to dismiss or following any settlement of that case, updating the Court and Judicial Watch regarding the underlying subpoena dispute, and indicating the Department's view as to whether it makes sense to proceed with this FOIA suit at that time or to continue the stay.

## CONCLUSION

For the foregoing reasons, Defendant's motion for a stay of proceedings should be granted.  A proposed order is attached.

January 11, 2013                                        Respectfully submitted,

                                                       STUART F. DELERY
                                                       Principal Deputy Assistant Attorney General

                                                       IAN HEATH GERSHENGORN
                                                       Deputy Assistant Attorney General

                                                       JOHN R. TYLER
                                                       Assistant Branch Director

                                                       *Luke M. Jones*
                                                       LUKE M. JONES
                                                       Trial Attorney
                                                       U.S. Department of Justice
                                                       Civil Division, Federal Programs Branch
                                                       20 Massachusetts Avenue, NW, Room 6126
                                                       Washington, DC 20530
                                                       Tel: (202) 514-3770
                                                       Fax: (202) 616-8460
                                                       Email:  luke.jones@usdoj.gov

                                                       *Counsel for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 11, 2013, I caused a true and correct copy of the foregoing motion to be served on plaintiff's counsel electronically by means of the Court's ECF system.

<u>/s/ Luke M. Jones</u>

LUKE M. JONES