UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JUDICIAL WATCH, INC., <br><br> Plaintiff, <br><br> v. <br><br> U.S. DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 12-1510 (JDB) |

## ORDER

This Freedom of Information Act ("FOIA") case, concerning Operation Fast and Furious documents, has been stayed pending developments in another case in this district—involving the same documents—since February 2013. Plaintiff, Judicial Watch, Inc., ("Judicial Watch") has moved to lift the stay. For the reasons explained below, the Court will grant in part Judicial Watch's motion and partially lift the stay.

## BACKGROUND

In 2011, the House Oversight and Government Reform Committee (the "House Committee") issued a subpoena to the Attorney General of the United States, seeking documents related to a congressional investigation into a Bureau of Alcohol, Tobacco, Firearms and Explosives operation known as Operation Fast and Furious. In response, President Barack Obama invoked executive privilege. The House Committee filed suit, seeking to enforce its subpoena and to challenge the President's assertion of executive privilege; that case is pending before Judge Amy Berman Jackson, another judge in this district. See Comm. on Oversight &

1

Gov't Reform, U.S. House of Representatives v. Holder, No. 12-1332 (ABJ) (D.D.C. Aug. 13, 2012) ("House Committee").

Soon after the President invoked executive privilege, Judicial Watch submitted a FOIA request for all records subject to that claim of executive privilege (in other words, for the very same records that are the subject of House Committee). See Pl.'s Compl. [ECF No. 1] at 2. The Department of Justice ("DOJ") denied that request. Id. at 2-3. Judicial Watch then filed suit, challenging that denial. This Court stayed the case in February 2013, in part "to allow ongoing settlement discussions [to continue] and, if a full settlement is not reached, to let the House Committee court rule on the [then-pending] motion to dismiss." Feb. 15, 2013 Order Staying Case [ECF No. 20] at 4. In the Order granting the stay, this Court explicitly noted that DOJ "does not seek, and the Court will not award, an indefinite stay pending ultimate resolution of the House Committee litigation," and that "the benefits of delaying this case might well [become] too attenuated to justify any further delay." Id. Since that Order, the Court has periodically reconsidered whether to extend the stay, and has found each time that continuing the stay is appropriate. See, e.g., Minute Order of Oct. 11, 2013. For a while, Judicial Watch opposed extension of the stay, and after the Court again continued the stay in November 2013, Judicial Watch appealed. Judicial Watch v. U.S. Dep't of Justice, No. 13-5337 (D.C. Cir. Nov. 8, 2013). The D.C. Circuit dismissed that appeal for lack of jurisdiction, see May 27, 2014 Mandate [ECF No. 34], after which Judicial Watch represented several times that continuing the stay was appropriate, see, e.g., Joint Status Report [ECF No. 33] at 1-2.

While all this was going on, Judge Jackson denied DOJ's motion to dismiss in House Committee, and the parties in that case then fully briefed and argued cross-motions for summary

judgment. Settlement discussions there, while ongoing, have not been fruitful, and Judge Jackson has not ruled on the recently filed summary judgment motions.

Following oral argument on the cross-motions for summary judgment in House Committee, Judicial Watch reversed its position on the propriety of the stay here. It now asks this Court to lift the stay and for this litigation to proceed as a normal FOIA case would, starting with an order from the Court that DOJ produce a Vaughn index. See generally Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973).

## DISCUSSION

Whether to grant or lift a stay is discretionary, but "[o]nly in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." Landis v. N. Am. Co., 299 U.S. 248 (1936); see Am. Life Ins. Co. v. Stewart, 300 U.S. 203, 215 (1937) (citing Landis, 299 U.S. at 255) ("in the exercise of a sound discretion [a court] may hold one lawsuit in abeyance to abide the outcome of another, especially where the parties and the issues are the same"); see also Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976) ("As between federal district courts . . . the general principle is to avoid duplicative litigation"); Stark v. Wickard, 321 U.S. 288, 310 (1944) (noting that if "numerous parallel cases are filed, the courts have ample authority to stay useless litigation until the determination of a test case"). Here, "[t]he Government's initial request for a stay was to avoid interference with another case—a case of public importance—and this present[s] strong consideration for [a] stay." Dellinger v. Mitchell, 442 F.2d 782, 787 (D.C. Cir. 1971). And unlike in other cases where a stay could harm plaintiff's case, here, Judicial Watch risks little prejudice "resulting from the loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party."

Clinton v. Jones, 520 U.S. 681, 708 (1997). Nevertheless, Judicial Watch should be required to sit on the sidelines here only for compelling reasons.

Avoiding interference with the House Committee case, and allowing negotiations between two co-equal branches of government to proceed undisrupted, is this Court's chief concern in considering whether to lift the stay. There are many good reasons not to decide the constitutional question(s) lurking here[1] before Judge Jackson does. The litigants in House Committee are competing branches of government. Resolution of subpoena disputes between the legislature and the executive involves a sensitive process of negotiation and accommodation. See United States v. AT&T Co., 567 F.2d 121, 130 (D.C. Cir. 1977) ("The Constitution contemplates such accommodation. Negotiation between the two branches should thus be viewed as a dynamic process affirmatively furthering the constitutional scheme."). If any court is to resolve a dispute between the political branches over executive privilege—and historically, such disputes have been resolved through negotiation rather than by resort to the judiciary—it should be, in the first instance, the court hearing the case in which both branches are represented. That is not this case. Moreover, it is not efficient for two judges in the same district to simultaneously resolve the same complex privilege question. What is more, House Committee is the earlier-filed suit, and that case has advanced to the point where the issues may be decided in the near future (subject to any appeals).

But this Court now concludes that this case may proceed without interfering with House Committee or upsetting the delicate balance of power between the branches. To fully resolve this FOIA dispute, absent any settlement, the Court will have to determine many issues logically antecedent to any constitutional question. That is because House Committee and this case are in very different procedural postures. In House Committee, DOJ is refusing to produce any

---

[1] Those questions involve the validity and scope of the executive privilege asserted by the President.

4

documents to the House Committee pursuant to a claim of executive privilege. The parties are litigating whether that privilege claim was proper, whether it covers all the documents being withheld, and whether the House Committee may defeat that privilege. Constitutional issues are thus teed up for resolution there.

Here, DOJ is withholding every document under FOIA Exemption 5. That provision exempts from disclosure any "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). So if, for example, a document is protected by a valid claim of attorney-client privilege, it will normally and properly be withheld under Exemption 5. See NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 149 (1975). So too if a document is protected by a valid claim of executive privilege. Id. Another frequently cited rationale for withholding documents under Exemption 5 is the common-law "deliberative process" privilege. Judicial Watch, Inc. v. Food & Drug Admin., 449 F.3d 141, 151 (D.C. Cir. 2006). Under that privilege, documents may be withheld if they are "predecisional" and "deliberative." Id. Other reasons justify withholding documents under Exemption 5 as well (e.g., attorney work-product), as its text makes plain. Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 864 (D.C. Cir. 1980).

DOJ claims here that, in addition to other Exemption 5 rationales, at least two distinct forms[2] of executive privilege justify withholding documents: a "deliberative process" privilege of constitutional dimensions and a "congressional response work-product" privilege. See Mem. in Supp. of Def.'s Mot. for Summ. J., House Committee, No. 12-1332 [ECF No. 63] ("House Committee Def.'s Mot.") at 21-27, 27-30. It appears that neither form has been expressly

---

[2] DOJ contends that these are differing justifications for, not forms of, executive privilege. House Committee Def.'s Mot. at 20 ("[t]here is only one Executive Privilege, grounded in the Constitution"). Without opining on the correctness of DOJ's formulation, the Court notes that it will refer to different forms of executive privilege for simplicity's sake.

recognized by any court. Id. (citing Senate Select Comm. on Pres. Campaign Activities v. Nixon, 498 F.2d 725 (D.C. Cir. 1974)). The contours of the constitutionally based "deliberative process" privilege seem plain: a document must, at minimum, be "predecisional" and "deliberative." See House Committee, No. 12-1332, May 15, 2014 Tr. of Oral Arg. [ECF No. 79] at 52-53 (attorney representing DOJ confirming that those are two elements of constitutional deliberative process privilege). The purported "congressional response work-product" privilege would cover a broader range of documents. See House Committee Def.'s Mot. at 27-30.

Importantly, the narrower constitutional privilege claimed by DOJ—the constitutional "deliberative process" privilege—appears to overlap with the traditional FOIA "deliberative process" privilege. In other words, if a document is both "predecisional" and "deliberative," it may be withheld under FOIA; it also would qualify as privileged under DOJ's conception of executive privilege.[3] But because DOJ could refuse to release that document to Judicial Watch in this case simply because it is exempt under garden-variety deliberative process privilege, the Court need not reach the constitutional privilege question for that document.

Setting aside documents that would be exempt under FOIA's deliberative process privilege, DOJ might withhold other documents in this case under Exemption 5 for reasons other than executive privilege. Imagine a document that is not predecisional and deliberative but that is protected by the attorney-client privilege. Other documents might also be protected from disclosure by other FOIA exemptions, to the extent DOJ has not waived its right to assert them.

Perhaps these exemption claims will permit DOJ to properly withhold all documents in this case. If so, that would end this case without any inquiry into executive privilege. But perhaps

---

[3] The Court does not opine on the existence or scope of that privilege; instead, the Court simply notes DOJ's arguments that a constitutionally-based "deliberative process" privilege exists and that it encompasses, at least, "predecisional" and "deliberative" documents. See House Committee, No. 12-1332, May 15, 2014 Tr. of Oral Arg. [ECF No. 79] at 52-53.

a Vaughn index or further litigation would reveal that some documents are not covered by deliberative process privilege—constitutionally based or otherwise—and are not exempt for any other reason under FOIA except perhaps for the congressional-response-work-product executive privilege claim DOJ has identified. Picture a document that is not predecisional and deliberative, that does not otherwise satisfy Exemption 5, and that is not covered by any other FOIA exemption.[4] DOJ might continue to withhold that document only because it is arguably the subject of a congressional-response-work-product executive privilege claim, and thus exempt under Exemption 5. To decide whether that document must be released, the Court would have to determine whether the executive privilege claim is valid and that it covers the document. Put differently, this Court needs to consider the executive privilege issue in this case only if no other reason permits DOJ to withhold a particular document under FOIA.

Thus, much is left to do here before this Court would reach any issues being addressed in House Committee or in the negotiations between the political branches. In this circuit, when an agency is withholding documents under exemption claims, courts require that the agency provide a Vaughn index so that the FOIA requester—at a distinct informational disadvantage—may test the agency's claims. See Am. Civil Liberties Union v. CIA, 710 F.3d 422, 432 (D.C. Cir. 2013). Vaughn indices were designed to allow the agency "to justify its actions without compromising its original withholdings by disclosing too much information. . . . By allowing the agency to provide descriptions of withheld documents, the index gives the court and the challenging party a measure of access without exposing the withheld information." Judicial Watch, Inc. v. FDA, 449 F.3d 141, 146 (D.C. Cir. 2006). True, nothing in the subpoena enforcement context of House Committee would require DOJ to produce a particularized description of the withheld documents. See Comm. on Judiciary, U.S. House of Representatives v. Miers, 558 F. Supp. 2d

---

[4] Again, to the extent DOJ has not waived its right to assert other exemptions.

7

53, 107 (D.D.C. 2008). But this is a FOIA case, and since 1973, when Vaughn was decided, courts in this circuit have required agencies to justify their FOIA withholdings on a particularized basis.[5] And doing so here will not prematurely expose or resolve the executive privilege issues ahead of Judge Jackson and the political branches; it will merely permit the parties and this Court to cull from the dispute any documents as to which a valid, non-executive-privilege reason for withholding exists, thereby narrowing or perhaps even resolving the case. To the extent DOJ argues that the mere production of the Vaughn index—not involving the release of any documents in dispute—would alter the historical balance of powers between the branches, any unbalancing would result from FOIA itself, a law passed by Congress and signed into law by the President, and which this Court cannot ignore forever.

Because many of the issues to be resolved in this case do not overlap with House Committee, and because resolving those issues will not risk upsetting the delicate balance of powers in subpoena disputes between the political branches, the Court will require DOJ to produce a Vaughn index here. That index should satisfy the law of this circuit, permitting Judicial Watch to test DOJ's exemption claims without exposing the withheld information. See Am. Civil Liberties Union, 710 F.3d at 432-433 (describing requirements of a Vaughn index). DOJ should focus in particular on explaining its reasons, if any, other than executive privilege[6] for withholding documents. Once Judicial Watch has a chance to review that index, and engage in discussions with DOJ to narrow the issues, the Court will set a briefing schedule to resolve

---

[5] Agencies frequently assert in FOIA litigation that "categorical withholding" of documents is proper, and that they need not even produce a Vaughn index as a result. But categorical withholding is appropriate "[o]nly when the range of circumstances included in the category 'characteristically support[s] an inference' that the statutory requirements for exemption are satisfied." Nation Magazine, Wash. Bureau v. U.S. Customs Serv., 71 F.3d 885, 893 (D.C. Cir. 1995). A common example is documents withheld under FOIA Exemption 7(C)—not at issue in this case—involving investigatory records compiled for law enforcement purposes, disclosure of which would constitute an unwarranted invasion of personal privacy. Id.

[6] To be precise, reasons other than DOJ's claimed "deliberative process" privilege of constitutional dimensions, since documents fitting into that category very likely may be withheld under the common-law deliberative process privilege.

8

any outstanding non-constitutional issues. Only after the Court has resolved those issues will it turn to any issues involving executive privilege; by that time, Judge Jackson will likely have ruled on the issue, providing this Court with guidance, or the political branches may have settled their dispute.

To be clear, the Court is not ordering the release of any documents currently being withheld in this litigation or in House Committee. But it is time for this case to move forward. Upon consideration of [35] Judicial Watch's motion to lift the stay, the various memoranda filed by the parties, the hearing held on July 8, 2014, and the entire record herein, and for the reasons explained above, it is hereby

**ORDERED** that [35] Judicial Watch's motion to lift the stay is **GRANTED IN PART**; it is further

**ORDERED** that the Department of Justice shall submit a Vaughn index in accordance with this Order and the law of this circuit by not later than October 1, 2014; it is further

**ORDERED** that this case shall remain **STAYED**, except for the further proceedings set out in this Order; it is further

**ORDERED** that the parties shall file a joint status report with the Court within fourteen days of any significant development in House Committee, but in any event by not later than October 15, 2014, at which time the Court will assess the future course of this case, including whether any further stay is appropriate; and it is further

**ORDERED** that a party seeking an extension of the production deadline for the Vaughn index shall file a motion in accordance with the Local Rules.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated: July 18, 2014